The STATE of Ohio, Appellee,

v.

WHITE, Appellant.

[Cite as *State v. White* (1989), 65 Ohio App.3d 564.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56169.

Decided Dec. 11, 1989.

**566**

*Patricia Blackmon,* Chief City Prosecutor, *C. Randolph Keller,* Chief Trial Counsel, for appellee.

*Berkman, Gordon, Murray & Palda, J. Michael Murray* and *Ann N. Butenhof,* for appellant.

JOHN V. CORRIGAN, Judge.

Appellant, Janet White, appeals her conviction in the trial court for pandering obscenity in violation of R.C. 2907.32(A)(5). The following facts give rise to this appeal.

On July 24, 1987, Detective William Reiber, a police officer with the Cleveland Bureau of Special Operations Strike Force, was dispatched to investigate the All Adult Book Store located at 3141 West 25th Street in

Cleveland, Ohio. Upon entering the establishment, appellant was observed behind the counter talking on the telephone. A second clerk sold Reiber $3 worth of tokens which were to be used to observe movies shown by video in a certain area of the store.

Reiber used the tokens to watch portions of two movies entitled "Poonies" and "Black Dick." He used $1.50 in tokens to view approximately nine minutes of each movie.

On July 30, 1987, Reiber returned to the All Adult Bookstore and again purchased $3 in tokens. While "Black Dick" was no longer playing, he was able to view another portion of "Poonies."

Reiber then proceeded to prepare an affidavit in support of a search warrant which set forth what he had observed at the store. This affidavit was presented to the judge who determined that there was probable cause to believe that both movies "taken as a whole" were obscene under the three-part test of *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. The judge then issued a search warrant for the premises authorizing the seizure of the two movies.

On August 3, 1987, the search warrant was executed by three police officers. After the officers entered the store, the customers were asked to leave and the doors were locked. At approximately 6:30 p.m., appellant arrived at the store and was permitted to enter the premises after she informed the officers that she was an employee.

The officers searched the store and seized a video cassette tape entitled "Poonies," a video cassette player, television monitor, and an advertisement. The film entitled "Black Dick" was not found anywhere in the store.

On September 2, 1987, appellant was charged with two counts of pandering obscenity in violation of R.C. 2907.32(A)(2) and 2907.32(A)(5). The city prosecutor, however, amended the charges against appellant and proceeded only on the count which charged a violation of R.C. 2907.32(A)(5).

On February 10 and 11, 1988, an evidentiary hearing was held on appellant's motion to suppress evidence seized during the execution of the search warrant. The court denied this motion. Thereafter, a jury trial was held and appellant was found guilty. This timely appeal followed.

In her first assignment of error, appellant claims that the trial court erred in denying her motion for judgment of acquittal made at the close of the state's case. Appellant argues that the evidence presented was insufficient as a matter of law to prove that she had committed the charged offense.

The standard used in determining whether a motion for acquittal is properly denied is set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9

O.O.3d 401, 381 N.E.2d 184. See, also, *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394, 399. Such a motion will be denied if reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. Crim.R. 29(A). *Bridgeman, supra; State v. Martin* (1985), 19 Ohio St.3d 122, 130, 19 OBR 330, 337, 483 N.E.2d 1157, 1165.

Appellant was charged with a violation of R.C. 2907.32(A)(5). This statute provides in relevant part that:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

"(1) Create, reproduce, or publish any obscene material, when the offender knows that such material is to be used for commercial exploitation or will be publicly disseminated or displayed, or when he is reckless in that regard;

"(2) Promote or advertise for sale, delivery, or dissemination; sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide, any obscene material;

"(3) Create, direct, or produce an obscene performance, when the offender knows that it is to be used for commercial exploitation or will be publicly presented, or when he is reckless in that regard;

"(4) Advertise or promote an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged;

"(5) Buy, procure, possess, or control any obscene material with purpose to violate division (A)(2) or (4) of this section."

The testimony presented in the state's case revealed that appellant was an employee of the All Adult Book Store. Reiber testified that appellant was present behind the counter of the establishment when he first went there and viewed the two movies entitled "Poonies" and "Black Dick."

Appellant contends that the state failed to prove that she had "knowledge" of the contents of the film as required under the language of the statute. It is maintained that because appellant did not directly sell Reiber the tokens used to view the movie, the evidence presented was insufficient to demonstrate that appellant had knowledge of the character of the film.

At the close of the state's case, the evidence aptly showed that appellant was present at the store when Reiber initially entered to view the films in question and again when the search and seizure was carried out. Moreover, on August 3, 1987, appellant entered the store after identifying herself as an employee.

This evidence along with the testimony describing the contents of the film could leave reasonable minds with different conclusions as to whether each material element of the crime charged had been proved beyond a reasonable doubt. *Bridgeman, supra.* Thus, the trial court did not err in denying appellant's motion for acquittal at the close of the state's case.

Appellant also posits that her conviction was based upon insufficient evidence due to the lack of knowledge on her part as to the character of the film. This argument is also without merit.

The language of R.C. 2907.32(A) describes the requisite element of scienter as "knowledge of the character of the material or performance involved * * *." R.C. 2907.35(A)(2) allows for a presumption of that "knowledge" when:

"(A) An owner or manager, or his agent or employee, of a bookstore, newsstand, theater, or other commercial establishment engaged in selling materials or exhibiting performances, who, in the course of business:

" * * *

"(2) Does any of the acts prohibited by section 2907.31 or 2907.32 of the Revised Code, is presumed to have knowledge of the character of the material or performance involved, if he has actual notice of the nature of such material or performance, whether or not he has precise knowledge of its contents."

Pursuant to the language of the statute, "precise knowledge is unnecessary and instead the emphasis is on the 'nature' of the material." *State v. Burgun* (1978), 56 Ohio St.2d 354, 364, 10 O.O.3d 485, 491, 384 N.E.2d 255, 262. "The state need not prove that the accused was aware of the *actual content* of the material, but only that he was on notice as to its nature or character." (Emphasis *sic.*) *State v. Young* (1988), 37 Ohio St.3d 249, 254, 525 N.E.2d 1363, 1369; *Burgun, supra,* at 364, 10 O.O.3d at 491, 384 N.E.2d at 262.

To prove that appellant had knowledge of the content of the obscene film, "Poonies," the state relied on evidence of appellant's presence in the store on at least two occasions. A review of the record reveals that the clerks who stood behind the counter in the store had full knowledge of all the materials available to their customers. As such they were responsible for distribution of these materials.

While this evidence may be deemed circumstantial, it was sufficient proof of appellant's knowledge of the character of the material on the premises. *Id.,* 56 Ohio St.2d at 365, 10 O.O.3d at 491, 384 N.E.2d at 263. Thus, appellant's contention that the state's evidence was insufficient as a matter of law has no merit.

In her second assignment of error, appellant argues that the trial court committed prejudicial error by conducting *ex parte* communications with the jury outside the presence of counsel. We agree.

It is well settled that "any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error which may warrant the ordering of a new trial." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 149, 524 N.E.2d 881, 886, citing *State v. Abrams* (1974), 39 Ohio St.2d 53, 39 O.O.2d 30, 313 N.E.2d 823. The presence of counsel during such communications ensures the opportunity to object or be heard on pertinent matters. *Bostic, supra,* at 149, 524 N.E.2d at 886.

■ In this case, the jury requested that the judge reread the instructions to clarify the elements of R.C. 2907.32, and also requested a reiteration of the definition of "obscenity." The trial judge complied with this request outside the presence of counsel. The record is silent as to how and where this *ex parte* communication took place and what was actually said.

The record reveals only that the trial judge reread the prior instructions given to the jury, and it was specifically noted in the record what pages of the instructions were reread although no written instructions were furnished to the jurors. The trial judge also responded to a question concerning the date for which appellant was charged with committing the violation of R.C. 2907.32(A)(5). The jury was told to concern themselves only with July 24, 1987 for purposes of the pandering obscenity charge.

Following this discussion, Foreperson Winfrey made it known to the judge that they were having difficulty interpreting the evidence. After an exchange, the judge stated that he could not answer questions regarding evidence without the presence of counsel.

■ This court stands behind the position that a trial judge should refrain from any contact with a jury in the absence of proper representation by both parties. *State v. Maynard* (1987), 38 Ohio App.3d 50, 53, 526 N.E.2d 316, 319. In *Sweet v. Clare–Mor Camp, Inc.* (1987), 38 Ohio App.3d 6, 9, 526 N.E.2d 74, 77, this court noted that there are limited circumstances where communications between the judge and jury following deliberations will be viewed as harmless. However, in this case, the judge's communications to the jury not only involved instructions on the applicable law, but also involved factual questions which related to dates in the indictment and evidence presented at trial. The trial judge erred to the prejudice of appellant in not calling in counsel prior to his communication with the jury. *Id.* Once the jury deliberation commences, a trial judge courts real danger in conversing with the jury

outside the presence of counsel for the parties. As such, appellant's second assignment of error is well taken.

Appellant's third assignment of error challenges the trial court's instruction on the element of "knowledge," which was necessary to find a violation of R.C. 2907.32(A)(5). Appellant objected to the following instruction:

"The State must prove by direct evidence that the defendant knew *or should have known* the nature of the content and character of the performance."

Appellant's contention that this instruction lessened the state's burden of proof is unfounded. We have already held that "knowledge" for purposes of R.C. 2907.32(A)(5) may be proved by way of circumstantial evidence. See *Burgun, supra.* Thus, appellant was not required to have actual knowledge of the content of the film "Poonies," as long as the evidence established constructive knowledge from her presence in the establishment.

Therefore, this assignment of error lacks merit.

■ Appellant's fourth assignment of error alleges that the trial court erred in not allowing defense counsel to cross-examine Reiber for purposes of impeachment with the use of a police report filled out incident to his entry into the All Adult Book Store. It is appellant's contention that pursuant to Crim.R. 16(B)(1)(g), he should have been permitted to cross-examine Reiber as to his prior inconsistent statement, *i.e.,* the report filled out on July 24, 1987.

Crim.R. 16(B)(1)(g) provides for an *in camera* inspection of a witness' statement following direct examination. On motion by the defendant, the court may examine the contents of the statement for inconsistencies which may exist between the testimony and the prior statement.

In *State v. Cummings* (1985), 23 Ohio App.3d 40, 43, 23 OBR 84, 87, 491 N.E.2d 354, 357, this court explained that "before a writing or recording can be considered a 'statement' of the witness, it must be shown that either the witness 'prepared, signed or adopted the statement, [or] that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so.'" *Id.,* citing *State v. Johnson* (1978), 62 Ohio App.2d 31, 37, 16 O.O.3d 74, 78, 403 N.E.2d 1003, 1008.

In this case, appellant sought to cross-examine Reiber as to matters in his written statement which were argued to be inconsistent with his testimony. The trial court did conduct an *in camera* inspection of Reiber's report when the request was made. In this sense, the report was treated as a written statement subject to the mandates of Crim.R. 16(B)(1)(g). *State v. Wilson* (1985), 23 Ohio App.3d 111, 115, 23 OBR 221, 225, 491 N.E.2d 715, 719; *State*

*v. Smith* (1976), 50 Ohio App.2d 183, 195–196, 4 O.O.3d 160, 166–167, 362 N.E.2d 1239, 1246–1247.

However, upon review of the statement, the trial court found that no inconsistencies existed which would have permitted appellant to use it for purposes of cross-examination. We agree with the trial court's ruling.

The testimony of Reiber revealed that he entered the All Adult Book Store, approached the counter, and purchased tokens to view movies. The written report relayed this same information. Thus, no inconsistencies existed to afford appellant the right to attempt to impeach Reiber with his prior statement.

Appellant's fourth assignment of error has no merit.

■ Appellant's fifth assignment of error challenges the trial court's failure to instruct the jury that mere proof of presence or employment was insufficient to establish a violation of R.C. 2907.32(A)(5).

The instructions given to the jury in this case, taken as a whole, informed the jury of what elements were necessary to find a violation of R.C. 2907.-32(A)(5). As discussed previously, the state did not need to prove that appellant had actual knowledge of the contents of the material available to customers in the store, but had to demonstrate that appellant had notice of the nature of the material. *Burgun, supra.*

The trial court instructed the jury that the evidence had to establish that appellant knew or should have known of the contents of the material to find a violation of R.C. 2907.32(A)(5). Thus, this instruction informed the jury of the very thing which appellant requested. If the jury decided that appellant did not know the contents of the material, her mere presence or employment was insufficient to find her guilty of the alleged offense.

Therefore, no error occurred by the trial court's failure to instruct the jury in the precise manner requested by appellant.

This assignment of error lacks merit.

Appellant's sixth assignment of error contends that the trial court erred in admitting state's Exhibit 10, the film "Poonies," into evidence. It is argued that the state failed to prove the authentication of the film for purposes of Evid.R. 901.

■ Pursuant to Evid.R. 901(A), authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc.* (1982), 8 Ohio App.3d 155, 158, 8 OBR 213, 216, 456 N.E.2d 551, 554. Authentication can be proved by way of testimony of a witness with knowl-

edge. Evid.R. 901(B)(1); *St. Paul Fire & Marine Ins. Co., supra; Tiger Investments of Columbus, Inc. v. Ohio Liquor Control Comm.* (1982), 8 Ohio App.3d 316, 8 OBR 424, 457 N.E.2d 320.

In this case, Reiber testified as to the contents of the film "Poonies" based upon the portions he viewed at the All Adult Book Store. He identified the motion picture as one advertised outside the booth in which he deposited tokens, and the one testified to for purposes of the search warrant issued by the trial court. Reiber's testimony established that the film "Poonies" marked as Exhibit 10 was a "fair and accurate representation of that which it represents." *Heldman v. Uniroyal, Inc.* (1977), 53 Ohio App.2d 21, 7 O.O.3d 20, 371 N.E.2d 557.

Reiber also testified that he viewed the film "Poonies" again following its seizure from the bookstore. While some scenes were different, he recognized portions as the same he viewed on his two visits to the establishment. Thus, the trial court did not err in admitting the exhibit following proper authentication by a witness with knowledge.

Appellant's sixth assignment of error is overruled.

Appellant's seventh assignment of error argues that the trial court erred in denying her motion to suppress evidence when the affidavit in support of the search warrant failed to establish probable cause, and was based upon false representations made by the police officer in question. Appellant also argues that the execution of the warrant constituted an unreasonable search and seizure. Upon review of the evidence submitted herein, we find that these contentions lack merit.

In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, citing *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548. A reviewing court's task in assessing the sufficiency of a challenged affidavit is to ensure "through a conscientious review of the affidavit, that the issuing magistrate had a 'substantial basis' for concluding that probable cause existed to search." *State v. Bean* (1983), 13 Ohio App.3d 69, 71, 13 OBR 83, 85, 468 N.E.2d 146, 149; *George, supra.*

■ The affidavit submitted in support of the search warrant issued in this case detailed the name of two movies viewed by Reiber, the length of time they were viewed, the location where they were found by Reiber and the fact that tokens were used to gain access to the films. The affidavit specifically described the sexual acts demonstrated in the portions of the films.

Based upon the fact that Reiber visited the establishment on at least two occasions, and used tokens to watch segments of the movies provided to patrons, he was able to demonstrate facts sufficient to establish probable cause to search the premises. The affidavit provided a substantial basis for the trial court to conclude that obscene material was being made available for sale at the All Adult Book Store.

Appellant argues that Reiber presented deliberate misstatements in the affidavit which influenced the trial court's determination of probable cause for issuance of the search warrant. Specifically, it is argued that Reiber stated that he watched both "Poonies" and "Black Dick" in their entirety, when, in fact, he had viewed portions of both. Appellant also contends that Reiber gave false information to the trial court by including information about the film "Black Dick" in the affidavit when he did not see the film at the establishment in his second visit there.

Initially, it must be pointed out that the affidavit does seem to provide that the length or running time of the films was under ten minutes. This statement is somewhat incorrect since this time period reflected the length of viewing time by Reiber and not the film's actual running time.

It is also true that Reiber's description of what he viewed states that "the movie 'Poonies' *starts* out showing * * *." While this statement, along with the time frame given for the movie's length, may not be particularly accurate, it cannot be termed a reckless falsehood on the part of Reiber.

The information given to the issuing magistrate, absent these incorrect statements, left sufficient evidence to establish probable cause. *State v. Hunt* (1984), 22 Ohio App.3d 43, 44, 22 OBR 139, 140, 488 N.E.2d 901, 903, citing *Franks v. Delaware* (1978), 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672. It cannot be said that these misstatements were made recklessly or with knowing falsehood.

■ Lastly, appellant argues that the search conducted was unlawful and amounted to a prior restraint. This contention fails since it has already been determined that the search was based upon probable cause. The officers who executed the warrant seized those materials discussed in the warrant and did so in a lawful fashion. See, *e.g., Roaden v. Kentucky* (1973), 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757.

Accordingly, appellant's seventh assignment of error lacks merit.

Having found merit in appellant's second assignment of error, the judgment of the trial court is reversed and this cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

NAHRA and STILLMAN, JJ., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.